327 So.2d 65 (1976)
AETNA CASUALTY & SURETY COMPANY, Appellant,
v.
Tina J. GREEN, Appellee.
No. Y-336.
District Court of Appeal of Florida, First District.
February 5, 1976.
Rehearing Denied March 11, 1976.
Robert P. Gaines, of Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellant.
Fredric G. Levin, Pensacola, for appellee.
CAWTHON, Associate Judge.
This is an appeal from a final judgment of the Circuit Court in and for Escambia County, William S. Rowley, Circuit Judge, which held that an excess indemnity policy provided uninsured motorist coverage for any damages sustained by the plaintiff over and above $100,000.00 as a result of the following facts:
1. The named insured rejected in writing uninsured motorist coverage on the motor vehicle involved in the accident, a commercial vehicle, which could have been provided by a comprehensive liability policy which did provide bodily injury liability coverage of $100,000.00 for each person and $300,000.00 for each occurrence. He did not reject uninsured motorist coverage for one of the private passenger vehicles covered by the policy and selected lower limits of uninsured motorist coverage for the others and the policy appropriately reflected these decisions.
*66 2. The named insured's decision to reject uninsured motorist coverage on the commercial vehicles and not on the private passenger vehicles was based on his belief that only persons covered by workmen's compensation would or should occupy the commercial vehicles and that therefore uninsured motorist coverage would be a needless expense insofar as those vehicles were concerned.
3. At the same time that the named insured applied for the general liability policy, he applied for an excess indemnity (umbrella) policy which listed the liability policy as underlying insurance.
4. The named insured was never offered uninsured motorist coverage under the excess indemnity policy and therefore never rejected it except by implication.
The applicable provision of the Florida Statutes read as follows:
No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in not less than the limits of the liability insurance purchased by the named insured for bodily injury, **[or such lower limits complying with the company's rating plan as may be selected by the named insured,] under provisions filed with and approved by the department, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable when, or to the extent that, any insured named in the policy shall reject the coverage... .., § 627.727(1), Florida Statutes.
The record and briefs present this court with the following questions:
1. Is the excess indemnity policy issued by the appellant to Mr. Charles Scruggs one of "automobile liability insurance" as referred to in § 627.727(1), Florida Statutes?
2. If the answer to 1. above is in the affirmative did Mr. Scruggs reject uninsured motorist coverage under the excess indemnity policy in a manner which would satisfy the requirements of § 627.727(1), Florida Statutes?
Our answer to the first question is in the affirmative. As indicated by their serial numbers and other evidence the comprehensive liability policy numbered 76AL 800707 CCA and the excess indemnity policy numbered 76XS 800707 WCA were parts of a general insurance program. The insured vehicles were listed on policy numbered 76AL 800707 CCA and it in turn was listed as an underlying insurance on policy numbered 76XS 800707 WCA. The policies were different in form but the excess indemnity policy "covered liability arising out of the ownership, maintenance or use of" a motor vehicle, and we consider these words as used in § 627.727(1), Florida Statutes to be in apposition to the phrase "automobile liability insurance" rather than in amplification, since any policy of automobile liability insurance would provide at least that coverage.
A comparison of the endorsement CC-46 8-2 to policy numbered 76XS 800707 WCA (Tr-47) with the endorsement CC-5003 to policy numbered 76AL 800707 CCA (Tr-75) clearly indicates the similarity in the type of automobile liability coverage provided by the two policies.
In order to answer the second question it is not necessary nor in our opinion desirable, that this court here approve what we consider the extremes to which one of our sister courts has gone in finding purported rejections of uninsured motorist coverage ineffective, Weathers v. Mission Insurance *67 Company, Fla.App., 258 So.2d 277 and Protective National Insurance of Omaha v. McCall, Fla.App., 310 So.2d 324.
The evidence in this case shows clearly that the required offer of coverage was never made. The named insured's statement in a deposition admitted by stipulation was to the effect that he did not reject the coverage because he was not given the option.
This court held in Wilson v. National Indemnity Company, Fla.App., 302 So.2d 141, that the rejection must be an informed rejection.
For the foregoing reasons the judgment of the trial court is affirmed.
The appellee has moved for leave to file an amendment to her brief and has requested, pursuant to Florida Appellate Rule 3.16(e), that her attorneys be awarded a fee.
The motion for leave to file an amendment to the appellee's brief is denied and the assessment of attorney's fees, if any are found to be due, is remanded to the trial court.
BOYER, C.J., and MILLS, J., concur.