339 So.2d 196 (1976)
Rufus ODOMS, Petitioner,
v.
The TRAVELERS INSURANCE COMPANY, a Foreign Corporation, and Herman Rosenblatt, D/B/a Pony Liquors, Respondents.
No. 47011.
Supreme Court of Florida.
November 4, 1976.
*197 Neal D. Evans, Jr., of Evans & Stewart, Jacksonville, for petitioner.
Edna L. Caruso of Howell, Kirby, Montgomery, D'Aiuto & Dean, West Palm Beach, for respondents.
ADKINS, Justice.
Certiorari was granted in this cause to review the decision of the District Court of Appeal, First District (306 So.2d 207) on ground of direct conflict with opinions of this Court and District Courts of Appeal. Article V, Section 3(b)(3), Florida Constitution.
For clarity, the parties will be referred to as in the lower court, i.e.: petitioner was plaintiff and respondent Rosenblatt was defendant. The defendant Travelers Insurance Company will be referred to as "Travelers."
Plaintiff, in his complaint, sought compensatory and punitive damages for malicious prosecution based upon the allegation that a criminal proceeding on a charge of forgery had been instituted with malice by defendant, but was subsequently terminated in favor of plaintiff in that it was dismissed at the request of defendant. The second count of the complaint alleged the same facts, but the cause of action was based upon malicious abuse of process.
In accordance with the claim of punitive damages, defendant was required to show his net worth. However, over objection of counsel, the trial court allowed plaintiff to introduce evidence that the policy limits of Travelers' policy insuring defendant was $300,000. The trial court reasoned that where punitive damages were being claimed, the policy limits should be admissible since the policies were an "asset."
The jury awarded the plaintiff $20,000 in compensatory damages and no punitive damages. Final judgment was rendered pursuant to the verdict and defendant's post-trial motions were denied.
Upon appeal, the District Court of Appeal reversed, holding that the trial judge erred *198 in allowing the policy limits into evidence and that this factor had resulted in a grossly excessive verdict. The Appellate Court stated that out-of-pocket expenses were only $130, and evidence to support the $20,000 award for compensatory damages was completely lacking. In its opinion the court said:
"While an appellate court is always reluctant to substitute its judgment for that of a jury in regard to the amount of damages to be awarded, it is the Court's duty to review the evidence and to reverse if it is found that the verdict and judgment are, as a matter of law, not supported by sufficient evidence or based upon evidence improperly submitted to the jury. It is our view that the verdict rendered in this cause is wholly unsupported by the evidence as disclosed in the record presented to this Court, and that the verdict was a result of the erroneous ruling of the trial court in permitting the appellee to introduce as evidence the policy limits of the policy insuring the appellant in the sum of $300,000.00.
* * * * * *
"In consideration of the above, it is our conclusion that the award of $20,000.00 to appellee is wholly unsupported by the evidence and is clearly excessive." 306 So.2d 207 at 208.
In seeking our jurisdiction plaintiff says:
(1) The District Court of Appeal substituted its judgment for that of the jury and the trial judge in regard to the amount of damages, and such decision conflicts with Brickman v. Garrido, 291 So.2d 26 (Fla.3d DCA 1974); Westerman v. Shell's City Inc., 265 So.2d 43 (Fla. 1972); and Maiborne v. Kuntz, 56 So.2d 720 (Fla. 1952); and
(2) In reversing the judgment because of the trial court's ruling admitting evidence of policy limits, the decision conflicts with Stecher v. Pomeroy, 253 So.2d 421 (Fla. 1971); Futch v. Josey, 263 So.2d 240 (Fla.2d DCA 1972); and Millitello v. Guest, 258 So.2d 463 (Fla.2d DCA 1972).
In Maiborne v. Kuntz, supra, a verdict for $10,000 in a malicious prosecution suit was held not to be unreasonable under the circumstances and the order of the trial court requiring a $9,000 remittitur was reversed. In Brickman v. Garrido, supra, $18,000 was awarded as compensatory damages and $2,000 as punitive damages. The out-of-pocket expenses were $960. The court in its opinion said:
"Although the plaintiff's out-of-pocket expenses were not large ($960.00), the other elements of damage in such action, sustained and suffered by the plaintiff as shown in the evidence, were of the kind for which determination of the amount to be awarded therefor could not be made by mathematical formula, and the valuation to be placed thereon was a matter within the province of the jury. The trial judge declined to reduce the compensatory damage award when importuned to do so. No sufficient reason has been shown for this court to determine otherwise." 291 So.2d 26.
In Westerman v. Shell's City, Inc., supra, we held that the District Court of Appeal had obviously re-weighed the evidence in a de novo consideration thereof and re-emphasized the rule that an appellate court cannot substitute its judgment by a re-evaluation of the evidence.
Under the general rule a verdict should not be disturbed on the ground of excessiveness unless it is manifestly so excessive as to shock the judicial conscience, or unless it is so excessive as to be indicative of prejudice, passion or corruption on the part of the jury, or unless it clearly appears that the jury ignored the evidence or misconceived the merits of the case relating to the amount of damages recoverable as, for example, by taking into consideration improper elements of damages. See 9A Fla.Jur. Damages § 99, pp. 30-31 and authorities cited.
The damages in the case sub judice were unliquidated and not subject to measurement by a particular standard. The jury, therefore, had considerable discretion, *199 but it was within the power of the trial judge to set aside any award that appeared to be grossly or manifestly excessive in amount. He chose not to exercise this power when he denied defendant's post trial motions. In other words, the amount was not excessive. Even in setting aside the judgment, the District Court of Appeal acknowledged the existence of evidence relating to damages, but held it insufficient, saying:
"The only evidence in support of such a verdict included testimony that appellee suffered some ridicule from his co-workers and friends, he felt badly about his arrest, he had some difficulty securing a job and that the arrest could be a deterrent to appellee in obtaining employment or advancing in a job which required the filling out of an application form which inquired as to whether the applicant had ever been arrested for or charged with a criminal offense." 306 So.2d 207 at 208.
The District Court of Appeal then delineated evidence which would be inconsistent with the verdict of the jury. It appears on the face of the opinion that, on the question of damages, there was a debatable evidentiary issue of fact upon which reasonable men might differ. This seems to be a guideline which we have followed in determining whether the District Court of Appeal had substituted its judgment for that of the jury and the trial judge. Exchange Bank of St. Augustine v. Florida National Bank, 292 So.2d 361 (Fla. 1974). If the reversal of plaintiff's judgment was based upon the theory that the verdict was "wholly unsupported by the evidence," the decision is in conflict with those discussed above and should be quashed. If there were no evidence to support the verdict then the decision is not in conflict. We think the District Court re-weighed the evidence.
However, the decision in the case sub judice also points out that the introduction of the policy limits was error and the verdict took into consideration this improper element of damages. In actions for personal injuries based upon negligence, we have held that policy liability limits should not be mentioned to the jury. If such is done, the jury should be instructed to disregard such evidence. However, the mention of policy liability limits is harmless error where it has no adverse effect upon the jury's verdict. Stecher v. Pomeroy, supra; Josey v. Futch, 254 So.2d 786 (Fla. 1971). The trial judge in the case sub judice held that the insurance policy's liability limits should be considered as an "asset" of the defendant and admitted the evidence on the theory that the policy limits could be considered in assessing punitive damages. This was error, but, under the circumstances of this case the error was harmless.
The record reflects that an appropriate instruction was given to the jury as to the elements to be considered in assessing compensatory damages. A further instruction was given concerning punitive damages and the elements to be considered in assessing those damages. The court instructed the jury that, on the theory of punitive damages, "evidence as to the defendant's financial ability has been admitted."
Although the jurors assessed compensatory damages they refused to assess any punitive damages. Therefore, they did not consider the policy limits. It seems illogical and unreasonable to say that evidence of the policy limits increased the amount of the compensatory damages when the jurors specifically found that they were not assessing punitive damages. It would have been quite simple for the jury to assess $5,000 compensatory damages and $15,000 punitive damages. In the latter event the admissibility of evidence of policy limits may well have influenced the size of the verdict in assessing punitive damages.
We cannot say as a matter of law that the disclosure of the policy limits influenced the jury or resulted in the verdict awarding compensatory damages. The error in disclosing policy limits was harmless.
The decision of the District Court of Appeal is quashed and the cause is remanded with instructions to further remand same to *200 the trial court directing the reinstatement of the judgment.
It is so ordered.
OVERTON, C.J., and ENGLAND, SUNDBERG and HATCHETT, JJ., concur.